# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-00381-SCT

*CITY OF JACKSON, MISSISSIPPI, AND*
*MIRANDA MORTON*

*v.*

*LYNDA KEY PRESLEY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2007 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | PIETER JOHN TEEUWISSEN |
| | CLAIRE BARKER HAWKINS |
| ATTORNEY FOR APPELLEE: | ROBERT P. MYERS, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 07/29/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     The issue presented in this Mississippi Tort Claims Act (MTCA) case is whether the trial court erred in holding that a police officer who was involved in an automobile accident acted in reckless disregard for the safety of others.  The Court of Appeals (COA) affirmed the trial court.  We reverse.

# BACKGROUND FACTS[1]

¶2.    According to her testimony, while patrolling near the "five-points" intersection in Jackson, police officer Miranda Morton received a call informing her that a man was reported lying in the street in the Georgetown area, unresponsive and bleeding. Although Officer Morton knew the dispatcher had called another officer to assist, she understood the call was hers.

¶3.    She drove south on Prosperity Street to Woodrow Wilson Avenue, where she turned right in heavy traffic. She had difficulty getting into the left lane to turn left off Woodrow Wilson Avenue to travel south to the Georgetown area, so she turned right onto Livingston Road and turned around in a parking lot. She then turned on her blue lights and siren and proceeded south on Livingston Road toward the busy "five-points" intersection, where the traffic signal facing her was red. She knew "five points" was considered a dangerous and high-risk intersection.

¶4.    Officer Morton entered the intersection against the red light, with her blue lights and her siren and buzzer on, at approximately five miles per hour. Although the cars in the first two lanes on Woodrow Wilson Avenue stopped, her view of the third lane was obstructed by a large truck in the second lane, and she was unable to see Presley, who was traveling west on Woodrow Wilson Avenue in the left-hand lane at approximately twenty to twenty-five miles per hour. Presley never saw or heard Office Morton's patrol car because

---

[1]For a more complete rendition of the facts, see *City of Jackson v. Presley*, 2009 WL 3823183,**1-3. (Miss. Ct. App. Nov. 17, 2009).

her view was also blocked by the large truck, and her windows were up and her radio was on.

¶5.     Presley and Officer Morton passed the truck at precisely the same time, and Officer Morton's vehicle struck the right passenger side of Presley's pickup truck, causing her vehicle to roll over several times and come to rest upside down.  Catouche Body, an attorney, witnessed the accident and testified that neither party could see the other because of the truck, and he confirmed that Officer Morton was using a buzzer as she entered the intersection, at approximately five miles per hour.

¶6.     Presley sued the City of Jackson and Officer Morton, alleging that Officer Morton had acted in reckless disregard for the safety of Presley.  Following trial, the court entered judgment in favor of Presley and against the City in the amount of $148,763.63, but held that Mississippi Code Section 11-46-7(2) shielded Officer Morton from personal liability.[2]  In rendering its final judgment, the trial court incorporated verbatim Presley's proposed findings of fact and conclusions of law.

¶7.     The COA reviewed the following three issues raised by the City: (1) whether the trial court erred in adopting Presley's proposed findings of fact and conclusions of law verbatim; (2) whether the trial court erred in finding reckless disregard against the overwhelming weight of the evidence; and (3) whether the trial court erred in failing to find contributory negligence on the part of Presley.

¶8.     As to the first issue, the COA held that the trial court's verbatim adoption of Presley's proposed findings of fact and conclusions of law was not error, but that it merely subjected

---

[2] *See* Miss. Code Ann. § 11-46-7 (2) (Rev. 2002).

the court's judgment to heightened scrutiny. As to the second issue, the COA held that the trial court did not err in finding Officer Morton's conduct evidenced reckless disregard for the safety of others. As to the third issue, the COA held there was no evidence Presley was contributorily negligent.[3] We granted certiorari and now reverse the judgment of the COA and trial court.

## ANALYSIS

¶9.     The standard of review of a judgment entered following a bench trial is well-settled. The trial court is entitled to the same deference accorded to a chancellor, that is, we will uphold the trial court's findings of fact, so long as they are supported by "substantial, credible, and reasonable evidence."[4] However, we review conclusions of law, including the proper application of the MTCA, de novo.[5]

¶10.     Additionally, as the COA correctly determined, when a trial court sitting as the finder of fact adopts verbatim one party's findings of fact and conclusions of law, those factual findings, while still entitled to deference, are subjected to heightened scrutiny.[6] Where a trial judge adopts one party's findings of fact and conclusions of law verbatim, "[t]hese findings

---

[3] *Presley*, 2009 WL 3823183, at *9.

[4] *City of Jackson v. Brister*, 838 So. 2d 274, 278-79 (Miss. 2003) (quoting *Maldonado v. Kelly*, 768 So. 2d 906, 908 (Miss. 2000)).

[5] *Id.*

[6] *Presley*, 2009 WL 3823183, at **3-4; *Brooks v. Brooks*, 652 So. 2d 1113, 1118 (Miss. 1995); *Rice Researchers, Inc. v. Hiter*, 512 So. 2d 1259, 1266 (Miss. 1987).

4

simply are not the same as findings independently made by the trial judge after impartially and judiciously sifting through the conflicts and nuances of the trial testimony and exhibits."[7]

## I.

¶11.    The portion of the MTCA pertinent to this case provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury. . . .[8]

¶12.    By requiring a finding of "reckless disregard of the safety and well-being of others," the Legislature set an extremely high bar for plaintiffs seeking to recover against a city for a police officer's conduct while engaged in the performance of his or her duties. The City is immune from liability for acts of negligence, and even gross negligence is not enough.

¶13.    This Court has held that "reckless disregard is a higher standard than gross negligence and 'embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'"[9] Also, it is usually "accompanied by a conscious indifference to

---

[7] *Rice Researchers, Inc.*, 512 So. 2d at 1266.

[8] Miss. Code Ann. § 11-46-9 (Rev. 2002).

[9] *Collins v. Tallahatchie County*, 876 So. 2d 284, 287 (Miss. 2004) (citing *Turner v. City of Ruleville*, 735 So. 2d 226, 320 (Miss. 1999)).

consequences, amounting almost to a willingness that harm should follow."[10] This Court has

further defined "reckless disregard" as:

> the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident happening without intent that any occur.[11]

¶14.    *Rayner v. Pennington* presented facts remarkably similar to those in this case.    In

*Rayner*, a sheriff's deputy received a dispatch call concerning an unspecified disturbance in

a trailer park.[12]    After switching on his blue lights and siren, Deputy McCarty proceeded

south down Highway 468 until he reached the intersection of Highway 468 and Highway

18.[13]    At the intersection, he slowed and crossed into the oncoming (northbound) lane of

Highway 468, coming to a complete stop at the red light.[14]    A vehicle in the east-bound

center turn lane of Highway 18 obstructed his view of the eastbound lane of Highway 18.[15]

The deputy testified that he "slowly creeped forward and stopped, creeped forward and

stopped, and creeped forward and stopped."[16]    His patrol car was struck by a minivan

---

[10] *Maldonado v. Kelly*, 768 So. 2d 906, 910 (Miss. 2000).

[11] *Rayner v. Pennington*, 25 So. 3d 305, 309 (Miss. 2010) (quoting *Turner*, 735 So. 2d at 229).

[12] *Rayner*, 25 So. 3d at 307.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

6

traveling in the east-bound lane of Highway 18.[17] He testified that he never saw the minivan, because his view was obstructed by the vehicle in the center lane of the highway.[18] This Court affirmed a grant of summary judgment in favor of the defendant, finding that after "[v]iewing the evidence in the light most favorable to [the plaintiff], nothing about [the deputy's] conduct demonstrated a conscious indifference to consequences equating to almost a willingness that harm should result. The deputy's safety measures showed that he exercised care in crossing the intersection, and his conduct did not rise to the level of reckless disregard."[19]

¶15.    Presley makes several attempts to distinguish *Rayner*, first arguing that the five-points intersection has been designated as a "high-risk" intersection because of its complexity and the number of fatalities which have occurred at this location, while the intersection in *Rayner* was not described in any detail. While the dangerousness of the intersection is certainly relevant, this fact alone is not enough to elevate Officer Morton's conduct to reckless disregard.

¶16.    Second, Presley argues (and the trial court and COA also found) that Officer Morton acted in reckless disregard because her actions in responding to the call were a violation of her General Orders, that is, that Officer Morton's response was inappropriate because this was not a "priority one" (life-or-death situation) call.[20] But like the plaintiff in *Rayner*,

---

[17] *Id.*

[18] *Id.*

[19] *Id.* at 313.

[20] *Presley*, 2009 WL 3823183 at *6.

7

neither Presley nor the COA cites any authority for the proposition that a violation of an internal police operating procedure constitutes reckless disregard. Furthermore, we are not convinced that an unrepsonsive, bleeding man lying in the street is a "situation . . . of such an insignificant nature that [s]he acted in reckless disregard by crossing the intersection against the red light."[21]

¶17. Like the deputy in *Rayner*, Officer Morton exercised some measure of safety precaution by employing her blue lights and siren, activating her buzzer to alert traffic while she was crossing the lanes, and crossing one lane at a time. Such actions hardly can be characterized as reckless and indifferent to the safety of others. Furthermore, the record shows that Officer Morton attempted to take alternate routes before she proceeded to the five-points intersection. So we find as a matter of law that her actions do not "evince an abandonment of all care,"[22] or show a "conscious indifference to consequences, amounting almost to a willingness that harm should follow,"[23] or that her actions were worse than gross negligence.

¶18. Because the record is devoid of evidence that Officer Morton acted in reckless disregard for the safety of the public, we are bound to conclude that the judgment of the trial court was against the overwhelming weight of the evidence. Therefore, the judgment of the trial court is reversed and rendered.

---

[21] *Rayner*, 25 So. 3d at 312.

[22] *Rayner*, 25 So. 3d at 309.

[23] *Maldonado,* 768 So. 2d at 910.

## CONCLUSION

¶19.    We reverse the Court of Appeals and the trial court and render judgment in favor of

Officer Morton and the City of Jackson.

¶20.    **REVERSED AND RENDERED**.

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.  GRAVES, P.J., CONCURS IN RESULT ONLY.**