# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-01610-SCT

*CITY OF JACKSON, MISSISSIPPI*

*v.*

*MARY GRAY, CHRIS CLAUSELL, ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/08/2009 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KIMBERLY CELESTE BANKS |
| | PIETER JOHN TEEUWISSEN |
| ATTORNEYS FOR APPELLEES: | JOE N. TATUM |
| | EDWARD D. MARKLE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 08/11/2011 |

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLSON, P.J., LAMAR AND KING, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.　Mary Gray, Peggy Pettaway, Kimberly Clausell, Lillian Byrd, and Chris Clausell filed negligence lawsuits against the City of Jackson, the City of Raymond, and Alice Wilson in the Circuit Court of the First Judicial District of Hinds County.[1]　Before trial, the City of Raymond settled with the plaintiffs, leaving the City of Jackson and Alice Wilson as

---

[1] Mary Gray and Peggy Pettaway are coadministrators of Alice Clausell's estate. The estate, Kimberly Clausell, and Lillian Byrd filed suit against the City of Raymond and the City of Jackson.　Chris Clausell filed suit against Alice Wilson.　The two suits were consolidated for the purposes of trial.

defendants. Following a bench trial, the circuit judge found that City of Jackson police officers had acted with reckless disregard for the safety of others and apportioned twenty percent of the damages to the City of Jackson. The City of Jackson now appeals from the trial court's judgment and argues that its police officers did not act with reckless disregard for the safety of others and that the police officers' actions were not the proximate cause of the plaintiffs' injuries. Finding that the City of Jackson police officers did not act with reckless disregard, we reverse the trial court's judgment and render judgment in favor of the City of Jackson.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On April 21, 2007, City of Raymond Police Officer Randy Razor initiated a pursuit of a gold Ford Explorer traveling on Highway 18 in Raymond, Mississippi. The Explorer was driven by Alice Wilson.[2] According to Officer Razor, Wilson was driving erratically, weaving onto the shoulder of the highway, and causing other vehicles to drive off the road. With his blue lights and siren on, Officer Razor pursued Wilson east-bound on Highway 18. Wilson did not respond to Razor's attempts to pull her over, and at one point Wilson narrowly avoided colliding with a motorcycle. Officer Razor continued his pursuit of Wilson on Highway 18 toward the City of Jackson. As Officer Razor and Wilson entered the city limits of Jackson, the City of Raymond police dispatcher notified the Hinds County dispatcher of the pursuit. The Hinds County dispatcher in turn notified the Jackson Police Department (JPD) dispatcher. Razor was able to get close enough to Wilson's vehicle to observe her behavior inside the vehicle. Razor testified that, despite Wilson being alone in

_____

[2] Officer Razor was unaware of the driver's identity at the time of the pursuit.

2

the vehicle, Wilson appeared to be talking as if there were a passenger in her vehicle. Based

on Wilson's behavior, Razor called in a possible "10-92."[3]

¶3.     JPD Officer Stephen Coleman was on Highway 80 in Jackson when he heard a "be

on the lookout" call for a Raymond police officer pursuing a vehicle into Jackson. Officer

Coleman drove his patrol car to the intersection of Highway 80 and Robinson Road and

blocked traffic as Wilson drove by, running a red light, with Officer Razor in pursuit.[4] JPD

Officer Terrance Spann also blocked traffic at the intersection of Highway 80 and Robinson

Road. JPD Sergeant Amy Barlow had instructed Jackson police officers to monitor and

assist the pursuit. No JPD officers were behind Officer Razor when he drove through the

intersection of Highway 80 and Robinson Road. Officers Coleman and Spann then followed

behind Officer Razor.

¶4.     Officer Razor continued to pursue Wilson into the downtown Jackson area. Officers

Coleman and Spann also continued to follow behind Officer Razor and Wilson. At this same

time, Metro One helicopter began to observe the pursuit from the air. Metro One notified

JPD of its position while the pursuit was near the intersection of Robinson Road and Ellis

Avenue. Shortly thereafter, Wilson approached the intersection of Robinson Road, Capitol

Street, and Amite Street. Wilson drove onto Amite Street, a one-way street, going the wrong

---

[3]During the trial, Razor testified that he had radioed the Hinds County Sheriff's Department and had given the dispatcher the description of the vehicle and the tag number, so that the dispatcher could obtain the vehicle registration information. Also, Razor testified that he had informed the dispatcher that he possibly could be dealing with a "10-92, which 10-92 is a mental person." In reality, according to the official "ten-code list," a 10-92 is an improperly parked vehicle and a 10-96 is a "mental subject."

[4] Highway 18 turns into Robinson Road.

3

way. Officer Razor continued to pursue Wilson down Amite Street, despite her driving against the flow of traffic. Officers Coleman and Spann did not follow Officer Razor onto Amite Street. When Wilson and Officer Razor drove onto Amite Street, Officer Coleman announced over the radio that he was terminating because Wilson was driving the wrong way on a one-way street. Officers Coleman and Spann then deactivated their blue lights and sirens and continued onto Capitol Street.

¶5. JPD Lieutenant Steve McDonald was traveling the correct direction, with the flow of traffic, on Amite Street when Officer Razor and Wilson passed him driving in the wrong direction. Lieutenant McDonald had his blue lights and siren on when Officer Razor and Wilson passed him, because he had been monitoring the radio communication and was aware that Wilson and the three patrol cars were in his area. When Lieutenant McDonald observed the direction that Officer Razor and Wilson were traveling, he radioed the City of Jackson dispatcher and instructed that the pursuit should be terminated. He also instructed the City of Jackson dispatcher to contact the City of Raymond dispatcher and request that the City of Raymond dispatcher instruct Officer Razor to terminate his pursuit.

¶6. At the same time, Officers Coleman and Spann were traveling east on Capitol Street with their sirens and blue lights deactivated. The officers stopped at a red light at the intersection of Capitol Street and Lamar Street and waited for the light to change. While Officer Coleman was stopped at the intersection, he observed Wilson and Officer Razor turn onto Capitol Street and proceed in the correct direction, with the flow of traffic.[5] Officer

---

[5] Based on his review of Officer Razor's deposition, plaintiff's expert Dennis Waller testified that the JPD officers had their blue lights on while stopped at this intersection.

4

Coleman then advised the City of Jackson dispatcher that Wilson and Officer Razor were eastbound on Capitol Street. Officer Coleman testified that he then lost visual contact with Wilson and Officer Razor because of the incline on Capitol Street. He said he did not see the two vehicles again until he arrived at the scene of the collision.

¶7. As Wilson and Officer Razor proceeded eastbound on Capitol Street, Kimberly Clausell (Kimberly), Lillian Byrd, and Alice Clausell (Alice) approached the intersection of Capitol Street and Congress Street, driving southbound on Congress Street. Kimberly was driving; Alice was in the front passenger seat; and Byrd was in the back seat. The traffic light was red as Kimberly approached the intersection, but it turned green by the time she reached the intersection. As Kimberly entered the intersection on a green light, Wilson proceeded eastbound through the red light of the same intersection and collided with Kimberly's vehicle. Alice died as a result of her injuries from the collision. Kimberly and Lillian Byrd were both injured in the crash.

¶8. Kimberly, Byrd, and Alice's estate filed suit against the City of Raymond and the City of Jackson, claiming that the defendants negligently had caused their injuries. Chris Clausell filed a different suit against Wilson on behalf of Alice's wrongful death beneficiaries. The two suits eventually were consolidated for the purposes of trial. The City of Raymond settled with the plaintiffs, leaving Wilson and the City of Jackson as defendants.

¶9. A bench trial was held in the Circuit Court of the First Judicial District of Hinds County, Judge William F. Coleman presiding. Following the trial, Judge Coleman entered an opinion and order, finding that Wilson was fifty percent at fault, the City of Raymond was thirty percent at fault, and the City of Jackson was twenty percent at fault. The trial judge

based many of his findings regarding the City of Jackson on General Order 600-20. The judge found that the JPD officers had violated General Order 600-20 for the following reasons: not stopping or proceeding in a direction opposite of Wilson, but rather driving in a parallel direction; arriving at the intersection of Capitol Street and Lamar Street prior to Wilson turning onto Capitol Street; following Wilson on Capitol Street; not obtaining approval to join Officer Razor's pursuit; and having three police cars in pursuit of Wilson. The trial judge also noted that the JPD officers were aware of the following: that Wilson had been speeding and running red lights; Wilson's vehicle had been identified by its registration, and that this information could lead to her later apprehension; that Metro One helicopter was observing the pursuit; and that Wilson's offenses were not felonies. The trial court also noted that the JPD officers did not order Officer Razor to terminate his pursuit. Finally, Judge Coleman stated: "The Court finds that under the totality of all the circumstances the Jackson officers acted in reckless disregard of the safety of others and that they did not in fact terminate the chase and negligently contributed to the cause of the plaintiffs' injuries and death."

¶10. After the trial court entered its opinion and order, the City of Jackson filed a Motion to Amend Opinion and Order, to Make Additional Findings, and for Other Relief, requesting, *inter alia*, that the trial court amend its opinion and refer to any facts showing that the City of Jackson's actions proximately caused or contributed to Wilson's actions. The trial court denied the City's motion regarding proximate cause, refusing to cite any facts relating to causation.

6

¶11.   The City of Jackson now appeals to this Court from the final judgment of the Circuit Court for the First Judicial District of Hinds County.   The final judgment, which was incorporated into the Opinion and Order, stated, *inter alia*:

> **IT IS THEREFORE ORDERED AND ADJUDGED**, that Chris Clausell, for the benefit of the wrongful death beneficiaries of Alice Clausell, deceased, recover from Alice Wilson the sum of $500,000 compensatory damages and $100,000 punitive damages.
>
> **IT IS FURTHER ORDERED AND ADJUDGED**, that Gray and Pettaway, co-administrators of the Estate of Alice Clausell, deceased, recover from the City of Jackson the sum of $200,000.00 compensatory damages; that Lillian Byrd recover the sum of $100,000.00 compensatory damages and that Kimberly Clausell recover from the City of Jackson the sum of $100,000.00 compensatory damages.

It must be noted that Wilson has not appealed from the judgment entered against her.  Only the City of Jackson appeals from the separate judgment entered against it. In today's appeal, the City of Jackson raises the following two issues: (1) whether the trial court erred in finding that the JPD officers had acted in reckless disregard; and (2) whether the trial court erred in apportioning liability of twenty percent to the City of Jackson without determining proximate cause.  We find issue one to be dispositive of the case and limit our discussion accordingly. *See* **Berry v. Patten**, 51 So. 3d 934, 937 (Miss. 2010).

## WHETHER THERE IS SUBSTANTIAL EVIDENCE IN THE RECORD TO SUPPORT THE TRIAL COURT'S FINDING THAT THE ACTIONS OF CITY OF JACKSON POLICE OFFICERS CONSTITUTED RECKLESS DISREGARD.

¶12.   This case was filed pursuant to the Mississippi Tort Claims Act and was subject to hearing and determination by a judge siting without a jury. Miss. Code Ann. § 11-46-13 (Rev. 2002).  "A circuit court judge sitting without a jury is accorded the same deference

7

with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *City of Ellisville v. Richardson*, 913 So. 2d 973, 977 (Miss. 2005) (quoting *City of Jackson v. Brister*, 838 So. 2d 274, 277-78 (Miss. 2003)). These findings will not be disturbed on appeal unless they are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000).

¶13. The Mississippi Tort Claims Act (MTCA) generally provides immunity for actions relating to police and fire protection. Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2002). This exemption from liability, however, does not apply to acts or omissions performed in "reckless disregard" for the safety and well-being of one not engaged in criminal acts.[6] *Id.* Although the MTCA does not define reckless disregard, our caselaw instructs that reckless disregard is a higher standard than gross negligence and that it involves willful or wanton conduct which requires knowingly or intentionally doing a thing or wrongful act. *Davis v. City of Clarksdale*, 18 So. 3d 246, 249 (Miss. 2009).

¶14. In *City of Jackson v. Presley*, 40 So. 3d 520, 521 (Miss. 2010), we reversed a trial court's finding that a JPD officer acted with reckless disregard when she was involved in a

---

[6] Mississippi Code Section 11-46-9(1)(c) provides:

A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . . (c) [a]rising out of any act or omission of any employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury . . . .

collision while responding to a call that a man was lying in the street, unresponsive and bleeding. The collision occurred at the busy intersection of Livingston Road and Woodrow Wilson Avenue. *Id.* The JPD officer entered the intersection on a red light with her blue lights and siren activated. *Id.* Cars in the first two lanes of traffic had stopped, but the officer's view of the third lane was blocked. *Id.* The officer proceeded at approximately five miles per hour and collided with a vehicle traveling through the intersection. *Id.* Despite both the trial court and the Court of Appeals finding that the officer had acted with reckless disregard, we reversed and found that "[b]ecause the record is devoid of evidence that [the officer] acted in reckless disregard for the safety of the public, we are bound to conclude that the judgment of the trial court was against the overwhelming weight of the evidence." *Id.* at 524.

¶15.    On other occasions, we have found that a governmental entity was not exempt from liability under the MTCA since it acted with reckless disregard for the safety and well-being of persons not engaged in criminal activity. In *City of Jackson v. Lipsey*, 834 So. 2d 687, 693 (Miss. 2003), we affirmed a finding of reckless disregard when a JPD officer, responding to a burglary call, turned suddenly into oncoming traffic without activating his headlights, blue lights, or siren. In *Brister*, 838 So. 2d at 276, we held that substantial evidence supported a finding of reckless disregard. In *Brister*, JPD officers pursued a check-forgery suspect for less than sixty seconds over a distance of less than one mile in a residential area. *Id.* As a result of the short pursuit, the suspect's vehicle collided with another vehicle. *Id.* The trial court in *Brister* based its finding of reckless disregard on several factors: the pursuit was contrary to a police department general order; the officers were engaged in active pursuit

9

when the collision occurred; the pursuit should have been terminated when the officers realized that the suspect would not pull over; and the officers did not properly balance the public's safety with the immediate apprehension of the suspect. *Id.*

¶16.    Most recently, in *City of Jackson v. Law*, ___ So. 3d ___, 2011 WL 1498368, at * 9 (Miss. April 21, 2011), we affirmed a trial court's finding of reckless disregard when a police officer pursued a known drug user and prostitute for seven miles into a residential neighborhood, despite the officer's supervisor instructing him to terminate the pursuit.

¶17.    The following factors may support a finding of reckless disregard in connection with a police pursuit: (1) length of the chase; (2) type of neighborhood; (3) characteristics of the streets; (4) presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; (6) seriousness of the offense for which the police are pursuing the suspect; (7) whether the officer proceeded with sirens and blue lights; (8) whether the officer had available alternatives which would lead to the apprehension of the suspect besides pursuit; (9) existence of a police policy which prohibits pursuit under the circumstances; and (10) rate of speed of the officer in comparison to the posted speed limit. *Richardson*, 913 So. 2d at 977 (citing *Johnson v. City of Cleveland*, 846 So. 2d 1031, 1037 (Miss. 2003)); *see also Brister*, 838 So. 2d 274. "It is appropriate for trial courts to consider all ten factors, and to look at the totality of the circumstances when analyzing whether someone acted in reckless disregard." *Richardson*, 913 So. 2d at 978. The trial court in today's case listed the ten factors and discussed some but not all of them. Notably, the trial court did not discuss the factors that tend to show the City of Jackson did not act with reckless disregard. Based on the facts before us and because the totality of the circumstances should be considered, we

10

address the factors the trial court analyzed in its opinion and order in addition to the other factors relevant to today's case.[7]  *See Id.*

¶18.    We must note at the outset of our discussion that the City of Jackson consistently has claimed that JPD officers did not, in fact, pursue Wilson, but rather, provided assistance to Officer Razor.  Thus, the City of Jackson argues that the **Richardson** factors are not applicable in today's case.  The trial judge essentially found that the JPD officers did pursue Wilson. This finding is supported by Waller's expert testimony.  Also, Jackson Police Department General Order 600-20 considers situations in which a pursuit initiated in one jurisdiction by another agency enters the City of Jackson's jurisdiction.  The general order requires officers to follow the same guidelines that are applied to pursuits initiated by City of Jackson officers.

¶19.    The City of Jackson claims that today's case is similar to ***McCoy v. City of Florence***, 949 So. 2d 69, 78-79 (Miss. Ct. App. 2006), in which the Court of Appeals found that officers from the City of Richland did not participate in a pursuit initiated by a City of Florence officer.  In ***McCoy***, a City of Florence officer initiated a pursuit of a driver who had a suspended license and had sped away from the officer before he could be arrested.  ***Id.*** at

---

[7] With regard to the factors relevant in the case before us, we distinguish today's case from **Law**, 2011 WL 1498368, at *15, where we stated that "[s]ince this Court has not held that all ten factors must be considered, this Court addresses only those factors that the trial court and parties addressed."  We agree that not all ten factors *must* be considered by the trial court.  However, in **Law,** we upheld a trial court's finding of reckless disregard based on the factors relevant to that case – namely, the factors that demonstrated that the trial court's holding was supported by substantial evidence.  *See **Id.***  Today, as part of the totality-of-the-circumstances analysis, we find all ten factors relevant and consequently address each one. *See **Richardson***, 913 So. 2d at 978.

73-74. The pursuit neared the City of Richland, and Richland police officers blocked traffic at intersections on Highway 49 in Richland. *Id.* at 74. The Court of Appeals found that, other than the City of Richland officers blocking traffic, "[t]here is no other evidence regarding Richland's involvement in the pursuit. That Richland police officers prevented traffic from entering Highway 49 is not involvement in a pursuit. At best, they were bystanders. Accordingly, we find that Richland was not involved in [the pursuit]." *Id.* at 79. We find the facts of today's case to be distinguishable from those in *McCoy*. While JPD officers did block traffic at various intersections, the police officers also followed Officer Razor and Wilson for several miles and testified that they had intended to provide assistance to Officer Razor while he was pursuing Wilson in their jurisdiction. Therefore, we find that the JPD officers – at least in a supporting role – participated in the pursuit. We now address each of the *Richardson* factors.

   *A.     Length of the Chase*

¶20.   The trial court found that the entire pursuit was approximately eleven miles long, with six or more miles being within the city limits of Jackson. It is undisputed that City of Jackson officers initially were not involved in the pursuit. The City of Jackson argues that the evidence produced at trial supports a finding that the City of Jackson's involvement in the pursuit was less than four or five miles. The City of Jackson quotes the following passage of testimony:

> [Plaintiff's Counsel]: Do you know the distance in miles from Highway 80 all the way to Congress Street where the crash occurred in downtown Jackson? Do you know the distance in miles?
>
> [Officer Coleman]: I'd say about four or five miles, but exact distance no.

12

[Plaintiff's Counsel]: I think that's a fair representation.

The plaintiff's expert, Waller, however, opined that the City of Jackson officers were involved in the pursuit for five to six miles.

### B.    Type of Neighborhood

¶21.    The trial judge noted in his opinion and order that Wilson drove through both commercial and residential areas while being pursued. Officer Coleman testified that the area of Robinson Road where the pursuit occurred contained residential and commercial neighborhoods. He also testified that churches, day care centers, and funeral homes are located in the area. The downtown Jackson area is mostly commercial, with a few residential areas.

### C.    Characteristics of the Streets

¶22.    The trial court did not address the characteristics of the streets in its opinion and order. Other than statements regarding the slight incline on Capitol Street, there is no evidence that the streets were particularly hilly, curvy, or poorly maintained.

### D.    Presence of Vehicular or Pedestrian Traffic

¶23.    The trial court did not address the presence of vehicular or pedestrian traffic in its opinion and order. The pursuit began on a Saturday afternoon at approximately 5:42 p.m. Waller testified that he did not know the traffic conditions in the downtown Jackson area at the time of the collision. He also stated that he did not know if any pedestrians were in the area. Lieutenant McDonald stated in his narrative report that traffic was light in the area of Amite Street and Gallatin Street. Officer Razor testified that there was little to no traffic in the downtown Jackson area at the time of the pursuit.

*E.      Weather Conditions and Visibility*

¶24.    The trial court noted in its opinion and order that the weather was clear and sunny during the pursuit.  The testimony at trial supports this finding.

*F.      The Seriousness of the Offense for Which the Police are Pursing the Suspect*

¶25.    The trial court stated in its order that the JPD officers had been aware that Wilson's offenses were not felonies.  Officer Coleman testified that he had not been aware of whether Wilson had committed any felonies or serious crimes at the time of the pursuit.  Waller also testified that none of Wilson's offenses were serious enough for the pursuit to continue into the city limits of Jackson.

*G.      Whether the Officer Proceeded with Blue Lights and Sirens.*

¶26.    The trial court did not discuss this factor.  Officer Coleman testified that he had his blue lights and siren on during the pursuit, that he deactivated them when he terminated the pursuit at Amite Street, and that he activated them again when he realized that the collision had occurred.

*H.      Whether the Officer had Available Alternatives Which Would Lead to the Apprehension of the Suspect Besides Pursuit.*

¶27.    The trial court stated in its opinion and order that the JPD officers were aware that the Metro One helicopter was observing the pursuit around the area of Ellis Avenue and that an officer had the tag number of the vehicle.  Andy Robinson, the tactical flight officer for Metro One, testified that JPD had acknowledged that he was above them somewhere between Ellis Avenue and Amite Street.  Officer Coleman testified that he could not remember

exactly when he had become aware that Metro One was observing the pursuit, but that he thought it was sometime after he had reached the three-way split at Amite Street.

       I.      *The Existence of Police Policy Which Prohibits Pursuit Under the Circumstances*

¶28.    The trial court focused much of its opinion and order on JPD General Order 600-20. First, the trial court cited Waller's testimony that the JPD officers had violated the order by: not stopping or proceeding in a direction away from Wilson and instead driving parallel to the path of Wilson; arriving at the intersection of Capitol Street and Lamar Street prior to Wilson; being present at that intersection; and further following Wilson on Capitol Street. The trial court also found that JPD Officers Coleman and Spann violated General Order 600-20 by not obtaining permission to join in Officer Razor's pursuit and by having more than two patrol cars in pursuit of Wilson's vehicle.

¶29.    We find some of the trial court's analysis of General Order 600-20 to be erroneous. First, the trial court stated that JPD Officers Coleman and Spann did not obtain permission to join in Officer Razor's pursuit. To the contrary, Sergeant Amy Barlow testified that she had advised City of Jackson patrol units to monitor traffic and assist with traffic when the pursuit had entered the City of Jackson's jurisdiction. The trial court also found that the JPD officers had violated the general order by having more than two patrol cars involved in the pursuit. General Order 600-20 states: "Unless circumstances dictate otherwise, a pursuit shall consist of no more than two police vehicles, a primary and a secondary unit. All other personnel shall stay clear of the pursuit *unless instructed to participate by a supervisor.*" (Emphasis added.) As noted above, the JPD officers were instructed by their supervisor to

15

monitor the pursuit and assist with traffic. Thus, they did not violate this portion of the General Order.

¶30. The trial court also considered that the JPD officers did not properly terminate their pursuit in accordance with the General Order. The Order instructs officers to "either come to a complete stop in a safe location and await further instructions from the supervisor or travel in the opposite direction of travel from the pursuit." Waller testified that JPD Officers Coleman and Spann had traveled in a parallel direction to the pursuit after terminating, thus violating the General Order. We should note, however, that the officers traveled in the only lawful direction available – east on Capitol Street.

> J.  *The Rate of Speed of the Officer in Comparison to the Posted Speed Limit*

¶31. The trial court did not discuss the speed of the JPD officers' vehicles. The trial court did, however, state that Wilson had been speeding. Waller testified that he thought the JPD officers had been speeding and that he based his opinion on the fact that the officers had been at the site of the collision and had helped Officer Razor arrest Wilson. Officer Coleman testified that he was driving at approximately forty-five miles per hour on Robinson Road, which has a speed limit of thirty-five miles per hour.

¶32. We consider the totality of the circumstances when determining an issue of reckless disregard. **Richardson**, 913 So. 2d at 978. As such, we also take into account that the JPD officers did not initiate the pursuit and that they consistently have claimed that their role in the pursuit was to assist with traffic, protect citizens, and protect Officer Razor if needed.

16

For example, when asked about the role of Officers Coleman and Spann in the pursuit, Lieutenant McDonald stated:

> They were to assist the Raymond officer because he was out of his jurisdiction, he was by himself, he was in an unfamiliar area. And for officer safety - - and this is our belief, that when officers come from another jurisdiction that they need that type of support. He had nobody else. Had something happened to where his life was in danger, no one would be there. So that's why we take it upon ourselves to assist in that matter.

Although these are not factors traditionally included in a reckless-disregard analysis, the unique facts of this case warrant consideration of the foregoing facts.

¶33. We find that the trial court's finding that the JPD officers "acted in reckless disregard of the safety of others" is not supported by substantial evidence. Notably, the trial court did not discuss facts that tend to show that the City of Jackson did not act with reckless disregard: the streets were not particularly curvy, hilly, or poorly maintained; there was little to no traffic in the downtown Jackson area; the JPD officers engaged their blue lights and sirens during the pursuit; the JPD officers did not travel at an usually high rate of speed. The trial court also did not consider that the JPD officers had been ordered by their supervisor to monitor and assist with traffic and erroneously concluded that the officers did not have permission to aid in the pursuit. Finally, the JPD officers testified that they were motivated to aid Officer Razor out of concern for his safety within their jurisdiction.

¶34. Based on the totality of the circumstances, we find that the JPD officers did not act with reckless disregard. We have defined reckless disregard as:

> the voluntary doing by motorists of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such act or failure to act evinces an entire abandonment

17

of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident happening without intent that any occur.

*Presley*, 40 So. 3d at 523 (citations omitted). The City of Jackson's actions in today's case do not evince "an entire abandonment of any care." *Id.* Thus we are constrained to find that the trial court's judgment was not supported by substantial evidence. Because we find that the City of Jackson did not act with reckless disregard, we need not address the issue of proximate cause.

## CONCLUSION

¶35.  Based on today's discussion, we reverse the judgment of the Circuit Court of the First Judicial District of Hinds County entered in favor of Mary Gray and Peggy Pettaway as coadministrators of the estate of Alice Clausell, and against the City of Jackson, and we render judgment here in favor of the City of Jackson.

¶36.  **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND KING, JJ., CONCUR. PIERCE, J., NOT PARTICIPATING.**

18