# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KM-00643-COA

**STEPHEN BORSI A/K/A STEPHEN ANTHONY BORSI**   **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2021 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN BORSI (PRO SE) |
| ATTORNEY FOR APPELLEE: | JOHN SHIRLEY |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 05/24/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND EMFINGER, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Stephen Borsi was arrested during a roadblock and, after a bench trial, found guilty of driving under the influence (DUI) in violation of Mississippi Code Annotated section 63-11-30(1)(c) (Supp. 2017).  Borsi appeals, arguing that (1) the roadblock was unregulated and violated his Fourth Amendment rights; (2) his *Miranda* rights were violated; (3) law enforcement officers should not have been allowed to provide opinions about his impairment from smoking marijuana; (4) there was no finding beyond a reasonable doubt that he was impaired; (5) he was improperly assessed an $85 transfer fee by the Rankin County Circuit Clerk; (6) he had a prescription for the drug and had only used it (legally) in Florida; (7) he

had used a product containing CBD, not THC; (8) certain testimony regarding his alleged impairment should have been struck from the record; (9) there was no proof of intoxication; (10) County Court Judge Kent McDaniel improperly based Borsi's DUI conviction on *Beal v. State*, 958 So. 2d 254 (Miss. Ct. App. 2007); and (11) DUIs should not be given to people taking prescribed substances in compliance with their prescriptions. We hold that Borsi's rights under the Fourth Amendment and *Miranda* were not violated, and the trial court's findings are supported by substantial credible evidence. Accordingly, we affirm Borsi's conviction; however, we reverse and render judgment regarding Borsi's claim related to the improper transfer fee.

## FACTS AND PROCEDURAL HISTORY

¶2. On the afternoon of April 13, 2019, Borsi visited Shawana Winstead at her home. Winstead testified that Borsi did not drink alcoholic beverages or smoke marijuana while they were together, nor had she ever seen him under the influence of either substance. Later, Borsi picked up his friend Christopher Hathaway from work, and the two returned to a campground where Borsi was living. The men later left the campground and eventually traveled west on Highway 80 in Rankin County.

¶3. That evening, the Mississippi Highway Patrol (MHP) set up a highway safety checkpoint on Highway 80 in Rankin County at the direction of the enforcement supervisor Trooper Willard Holifield. He would later testify that the purpose of the roadblock was to "find those that are driving without licenses, suspended license[s], no license, insurance, seat

2

belts[,]" as well as outstanding warrants. The MHP's general practice was to stop all vehicles that passed through the checkpoint unless traffic became too heavy. There is no indication in the record that the MHP deviated from its general practice on the night in question.

¶4. At the checkpoint, Trooper Holifield was standing at the road's centerline when he encountered Borsi and Hathaway, who were traveling in the westbound lane on Highway 80. Borsi drove up and rolled his window down as Trooper Holifield approached the vehicle to ask for his driver's license. "Immediately, while [Borsi] was producing the driver's license, [Holifield] smelled the presence of burnt marijuana emitting from [Borsi's] vehicle." Trooper Holifield asked Borsi to pull over to the side for questioning. Trooper Holifield then began talking to Borsi about the marijuana he smelled. Borsi admitted that he had been smoking marijuana about two hours earlier at his campsite but later testified that he felt threatened to "tell the truth" or he would be going to jail. Trooper Holifield never testified that he threatened Borsi, and Trooper Ivana Williams, another officer, testified she did not threaten Borsi. In contrast to Borsi's preceding statement, Borsi also testified that he did not believe he would be arrested or jailed because he was obviously sober. It is uncontested that Trooper Holifield had not advised Borsi of his *Miranda* rights before this exchange took place.

¶5. Trooper Holifield then asked Trooper Williams to take over so that he could continue supervising the roadblock. Trooper Williams administered a field sobriety test, which Borsi

failed. Trooper Williams testified that Borsi admitted to having smoked marijuana. During her investigation of Borsi, Trooper Williams was called to the scene of an accident, so Trooper Holifield returned to continue the investigation of Borsi.

¶6. At this point, Trooper Holifield questioned Borsi and Hathaway again in order to see if their original story changed. Trooper Holifield testified that Borsi admitted he had bought $50 worth of marijuana, and he and Hathaway both admitted to smoking it at Borsi's camper about two hours prior to being stopped at the checkpoint. In the arrest report, Trooper Holifield noted that Borsi had bloodshot eyes and that his "pupils were kind of wide"; Borsi "was kind of sluggish," and his "speech was a little slow," and "you could tell he was obviously unstable." Borsi was allowed to call his friend Shawana Winstead (whom he had visited earlier that day) to come to the roadblock to retrieve his car. Trooper Holifield then arrested Borsi and placed him in his patrol car. It is unclear from the record exactly when Trooper Holifield collected a partially burned marijuana cigarette from underneath Borsi's front passenger seat. Borsi gave permission for the collection of a urine sample just over half an hour after the initial stop.

¶7. On August 12, 2019, Borsi pled no contest and was convicted of violating Mississippi Code Annotated subsections 63-l-30(l)(b) and (c). The Rankin County Justice Court imposed fines, a suspended 48-hour sentence, and required that Borsi attend certain educational classes. Borsi appealed the DUI conviction to the County Court of Rankin County, but he failed to appeal the possession conviction. He later was granted permission to file an out-of-

time appeal of the possession conviction.

¶8.     Prior to the bench trial on February 12, 2020, the State agreed to nolle prosequi the possession charge.[1]  Borsi moved to dismiss the DUI charge based on alleged discovery violations and filed a motion to suppress for various *Miranda* violations.  The trial court denied these motions.[2]  At trial, the State called Archie Nichols and David Lockley—both from the Mississippi Crime Laboratory—who were accepted as experts in the fields of drug identification and toxicology, respectively.  Nichols testified that the partially burned cigarette found in Borsi's car contained marijuana.  Lockley testified that Borsi's urine was positive for "11 NOR-9 carboxy Delta 9 THC."  He further testified that cannabidiol (CBD) and tetrahydrocannabinol (THC) are different compounds and that the test verified Borsi had previously used marijuana, but it did not pinpoint when he had been exposed to the drug.  Lockley also testified that the test did not indicate how much marijuana was in Borsi's system, nor whether Borsi was impaired.  Borsi did not present any experts to refute the testimony of either Nichols or Lockley.  After the State presented its evidence, the court denied Borsi's motion for a directed verdict.

¶9.     Borsi testified that he initially told Trooper Holifield he had been smoking marijuana.  But at some point after his arrest, Borsi's version of the events changed.  He became adamant

---

[1] Hathaway pled guilty to possession of the marijuana cigarette found in the car.

[2] There was no appeal pertaining to the alleged discovery violations, nor was there a specific appeal of the denial of the motion to suppress, but possible *Miranda* violations were mentioned in the briefing and are addressed here.

that he had not smoked marijuana (despite having made much of the fact that he had a prescription for the drug) since he was in Florida a week earlier, at which time he had bought $50 worth of a product containing CBD. Borsi said that he only admitted to smoking marijuana on the day of his arrest because he did not distinguish between the CBD that he had purchased and marijuana. He also said he felt threatened by Trooper Holifield and that he "had never heard of a weed DUI." Borsi denied knowing about the partially smoked marijuana cigarette that was found in his car. He admitted that Hathaway had rolled a joint in the car, but Borsi said it was CBD. Borsi's testimony about how much of this joint he smoked is conflicting: at trial he testified that he only had one puff; but in his briefing to the circuit court and this Court, Borsi says "they smoked [the CBD joint,]" and it "was completely consumed" before they got to the roadblock. Winstead, Borsi's only witness, testified that she had never seen Borsi under the influence and that he was not under the influence at the time of his arrest.

¶10.     At the conclusion of the trial, Judge McDaniel found Borsi guilty of violating section 63-11-30(1)(c) and sentenced him from the bench. Borsi was assessed $600 for the two laboratory reports, fined $1,000 (with $500 suspended), and assessed another $50 for the DUI conviction. Borsi was allowed ninety days to pay the assessments and fine. He was sentenced to forty-eight hours of confinement, less the time he had already served, conditioned on his prompt payment of the assessments and fine. Borsi also was required to undergo a drug assessment and submit to three months of supervised probation by a company

6

named Court Watch. In addition, Borsi was ordered to complete the Mississippi Alcohol Safety Education Program (MASEP) within 180 days of sentencing. Finally, Borsi's driver's license was suspended for one year. When the final judgment was entered later that day, it included an additional three months of unsupervised probation following the three months of supervised probation.

¶11. Borsi appealed to the Rankin County Circuit Court. In addition to ordinary costs of preparing the record on appeal, he paid a cash appearance bond in the amount of $1,000, a bond fee of $20, and what is listed in the record on appeal as a "Circuit Court Transfer Fee" in the amount of $85. On May 7, 2021, the circuit court affirmed the conviction and remanded the case to the county court for the execution of the sentence. Borsi appealed to the Supreme Court, which assigned the case to this Court, making the arguments noted in paragraph 1 above.

**STANDARD OF REVIEW**

¶12. "The standard of review of a judgment entered following a bench trial is well-settled." *City of Jackson v. Presley*, 40 So. 3d 520, 522 (¶9) (Miss. 2010). A county court or circuit judge sitting without a jury "is entitled to the same deference accorded to a chancellor, that is, we will uphold the trial court's findings of fact, so long as they are supported by 'substantial, credible, and reasonable evidence.'" *Id.* (citing *City of Jackson v. Brister*, 838 So. 2d 274, 277-78 (¶13) (Miss. 2003)). We apply de novo review to challenges to judgments on constitutional grounds. *Sellers v. State*, 323 So. 3d 1111, 1115 (¶13) (Miss.

7

Ct. App. 2021); *see Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶11) (Miss. 1999).

## DISCUSSION

### I. Whether the roadblock was unregulated or violated Borsi's Fourth Amendment rights.

¶13. Borsi alleges that law enforcement had no probable cause or reasonable suspicion to stop his vehicle on the night he was arrested. Borsi further alleges that his Fourth Amendment rights were violated when he was stopped and detained by the MHP, during which time several incriminating statements were elicited from him, a urine sample was taken, and an alleged controlled substance was located in his car.

¶14. We hold that the State's interest in conducting a roadblock with the primary purpose of checking driver's licenses and insurance cards substantially outweighed the minimal intrusion of Borsi's individual liberty, and the roadblock did not violate the Fourth Amendment or the search-and-seizure provision of the State constitution. *McLendon v. State*, 945 So. 2d 372, 382 (¶25) (Miss. 2006), *cert. denied*, 551 U.S. 1145 (2007). The roadblock served public concerns: officers ultimately seized Borsi while he was driving under the influence where MHP troopers consistently and indiscriminately stopped every vehicle at the roadblock, and Borsi was not subjected to a random stop or an unbridled officer's discretion. *Id.* at 381-82 (¶24); *see also Briggs v. State*, 741 So. 2d 986, 989-90 (¶¶8, 10) (Miss. Ct. App. 1999) (declining to find that "a roadblock intended principally to detect unlicensed drivers or improperly registered and uninspected vehicles" was an "unconstitutional invasion [] of the personal security from unreasonable seizure afforded motorists under the Fourth

Amendment").

¶15.    Borsi admits that "licensing and registration requirements are fundamental to any state's highway safety program[,]" but he questioned the MHP's authority to set up the roadblock. Trooper Holifield's testimony that as an enforcement supervisor, he had the authority to approve the details of a checkpoint—as he did on April 13, 2019—was unrefuted at trial. Trooper Holifield testified that the purpose of the roadblock was to "find those that are driving without licenses, suspended license[s], no license, insurance, seat belts[,]" as well as outstanding warrants. We find this reason to be appropriate for a roadblock. Additionally, there was testimony that it was the general practice of the MHP to stop all cars that passed through the checkpoint unless traffic became too heavy. There is no indication in the record that the MHP deviated from its general practice on the night in question. The decision of the circuit court is affirmed on this issue.

**II.    Whether Borsi's *Miranda* rights were violated.**

¶16.    Borsi also maintains that he was subjected to custodial interrogation in violation of his *Miranda* rights. Borsi has provided a loose argument at best, and the only authority he cites in support is the Fourth Amendment and a quotation made by his trial counsel that references two cases (without citations). Mississippi Rule of Appellate Procedure 28(a)(7) requires that the argument section of an appellant's brief "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." This Court has

9

consistently held that the "[f]ailure to cite any authority is a procedural bar, and [we are] under no obligation to consider the assignment." *Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶4) (Miss. Ct. App. 2005) (citations omitted); *see also Jefferson v. State*, 138 So. 3d 263, 265 (¶9) (Miss. Ct. App. 2014) (holding that "[t]he appellant must affirmatively demonstrate error in the court below, and failure to do so waives an issue on appeal"). Because Borsi has failed to supply any legal authority on this issue, we are not required to address this assignment of error. But given the importance of this fundamental right, we will address this issue.

¶17. It is unclear exactly when Trooper Holifield read or gave Borsi his *Miranda* rights. Trooper Holifield stated that he did not do so immediately after Borsi was stopped at the roadblock, nor did he do so at the time of the arrest. Trooper Holifield agreed with defense counsel at trial that *Miranda* warnings were given at "the very end of the whole deal." Ruling from the bench, the trial judge took all arguments pertaining to the timing of the *Miranda* warning into account, stating:

> [O]ur Supreme Court and Court of Appeals both had multiple opportunities to address things like roadblocks and have adamantly declined to do that. They've also had the opportunity to say that *Miranda* attaches as soon as the blue lights come on; they have not done that. In fact, they specifically allow for a reasonable period for the officer to investigate, resolve a circumstance that he's confronted with or she is confronted with. So there's no *Miranda* violation in anything I heard today. Maybe toward the end the time period was going too long, but he had already—the cat was out of the bag. He had already said I've been smoking dope. So anything that happened after that was not—was harmless to their case against him[.]

¶18. "Whether [Borsi's] *Miranda* rights were violated depends on whether he was in

10

custody and being interrogated" at the time the alleged incriminating statement was made. *Greenlee v. State*, 725 So. 2d 816, 825 (¶23) (Miss. 1998). "A person's *Miranda* rights are not triggered by general on the scene questioning and/or any voluntary statement." *Id.*; *accord Millsap v. State*, 767 So. 2d 286, 289-90 (¶¶7-12) (Miss. Ct. App. 2000) (holding a traffic stop alone is not an arrest or custodial interrogation requiring *Miranda* warnings). "*Miranda* warnings are applicable to custodial interrogation, that is, questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *In re Wilder*, 347 So. 2d 520, 521 (Miss. 1977). While it appears that Borsi's stop may have turned custodial prior to his arrest, his initial statement that he had smoked marijuana two hours before he was stopped occurred in the first moments of the investigation of the stop, and no *Miranda* warnings were required at that point. The decision of the circuit court is affirmed on this issue.

> **III. & IV.      Whether lay opinions about Borsi's alleged marijuana use should have been allowed, and whether the presence of marijuana metabolites was insufficient to find Borsi guilty beyond a reasonable doubt.[3]**

¶19.     Borsi was convicted of violating Mississippi Code Annotated section 63-11-30(1)(c), which states that it is illegal for a person to drive a car while "under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law[.]" Borsi argues that no evidence proved he was under the influence of, or

---

[3] We address Borsi's third and fourth arguments collectively.

11

impaired by, marijuana at the time he was stopped. His arguments (slightly reframed) are that the trial court improperly found him impaired because of marijuana exposure evinced by Troopers Holifield's and Williams' lay opinion testimony, and the presence of marijuana metabolite in his urine did not establish impairment beyond a reasonable doubt.

### A. Testimony of Troopers Holifield and Williams

¶20. It is undisputed that Borsi admitted to Troopers Holifield and Williams that he had smoked marijuana a couple of hours before he encountered the roadblock. Borsi voluntarily agreed to submit a urine sample for analysis, which Trooper Holifield turned over to the Mississippi Crime Laboratory. At trial, Troopers Holifield and Williams were allowed to testify, given their experience as law enforcement officers, that Borsi was under the influence of marijuana based on their interactions with and observations of him. When Borsi rolled his window down at the roadblock Trooper Holifield smelled marijuana. Furthermore, Trooper Holifield noted Borsi's bloodshot eyes and testified his "pupils were kind of wide"; Borsi "was kind of sluggish," his "speech was a little slow," and "you could tell he was obviously unstable." Trooper Holifield testified that he had "arrested hundreds and hundreds of DUI people under the influence of marijuana and alcohol." And on the night in question, "[he] felt that [Borsi] was under the influence of marijuana . . . ." Trooper Williams said Borsi's eyes were red and "glazed over."

¶21. Borsi argues that there is no known correlation between red eyes and "being too impaired to drive due to THC intoxication." He also argues that the field sobriety tests that

12

were administered (the horizontal gaze nystagmus test (HGN) and the one-leg stand) have not been "validated for marijuana." Additionally, Borsi maintains that the trial testimony of Trooper Holifield and Trooper Williams about his eyes, the field sobriety testing, and their conclusions about his inability to drive constituted impermissible lay opinions.

¶22. In *Graves v. State*, 761 So. 2d 950, 954 (¶9) (Miss. Ct. App. 2000), this Court affirmed a trial court's decision to allow a police officer to give lay opinion testimony about administering the HGN test to a defendant because the testimony was used to show the existence of probable cause (instead of being relied on as scientific evidence to prove intoxication or impairment). Similarly in *Christian v. State*, 859 So. 2d 1068, 1071 (¶5) (Miss. Ct. App. 2003), we affirmed a trial court's admission of opinion testimony of officers as to whether a defendant was under the influence, without officers being tendered as experts. We held that the officers did not have to be tendered as experts to testify as to their personal observations of the defendant under Rule 701 of the Mississippi Rules of Evidence. *Id.* at (¶10). And Rules 701 and 704 allowed "the officers the ability to testify to opinions and inferences, even on ultimate issues, as long as opinions [were] otherwise admissible, . . . were rationally based on the perceptions of the officers, helpful to the trier of fact, and not based on scientific knowledge." *Id.* Although *Graves* and *Christian* concern alcohol-based intoxication, in *Holloman v. State*, 820 So. 2d 52, 58-59 (¶20) (Miss. Ct. App. 2002), we saw no reason to distinguish between the permissible evidence in situations involving alcohol from those involving illegal narcotics.

13

¶23. Neither of the troopers testified as experts, although they both discussed their specialized training regarding DUIs and the types of field sobriety tests Borsi was given. Over objections from Borsi, the trial court allowed Troopers Holifield and Williams to testify to their physical observations of Borsi. The trial judge further stated that he was not using the troopers' testimony about the testing to determine whether Borsi was intoxicated, only "to determine if there was probable cause to take him in." As discussed above, this ruling is in accord with Mississippi law. The trial court did not err in allowing the testimony of Troopers Holifield and Williams.

### B. Testimony of Archie Nichols and David Lockley

¶24. Archie Nichols and David Lockley of the Mississippi Crime Laboratory testified as experts in the fields of drug identification and toxicology, respectively. Nichols testified that the partially burned cigarette found in Borsi's car contained marijuana. When asked by the court if "the fingerprint for CBD is distinguishable from the fingerprint for THC," Nichols answered in the affirmative. Lockley testified about the results of the tests conducted on Borsi's urine sample. He said that "CBD and THC are two completely different compounds, and they break down in different ways into different metabolites," so a sample containing CBD would not test positive for 11-NOR-9 carboxy Delta 9 THC. Lockley explained that initially an immunoassay test was performed on the sample, and when it came back indicating that cannabinoids might be present, a confirmation test was done, which showed positive results for 11-NOR-9 carboxy Delta 9 THC. Upon questioning by Borsi, Lockley

14

testified that multiple techniques could be used to confirm the immunoassay test results, but he did not believe one to be "more accurate, [or] more reliable" than the one he used. Lockley also stated that the test verified that Borsi had previously used marijuana, but it did not pinpoint when he had been exposed to the drug, how much marijuana was in Borsi's system, or whether Borsi was impaired. Borsi did not present any experts to refute either Nichols' or Lockley's testimony.

¶25. Borsi does not challenge the qualifications of the State's experts; instead he challenges the trial court's application of the test results to the instant facts, arguing that because the tests were not indicative of when he used marijuana or its effects on him at the time of the roadblock, there was no evidence to support a finding of guilt of DUI beyond a reasonable doubt. It is a long-standing rule that in a bench trial, "a judge may place whatever weight he or she chooses on expert testimony . . . ." *Univ. of Miss. Med. Ctr. v. Pounders*, 970 So. 2d 141, 147 (¶26) (Miss. 2007). We see no reason to disturb the finding here.

¶26. Borsi also takes issue with the fact that a urine sample was taken instead of a blood sample. The Mississippi Crime Laboratory can test "a person's blood, breath, urine or other bodily substance for the determination of the presence of alcohol or any other substance which may impair a person's mental or physical ability." Miss. Code Ann. § 63-11-3 (Rev. 2013). Additionally, this argument carries no weight as this Court has affirmed DUI convictions where neither blood testing nor urine testing was done. *Beal v. State*, 958 So. 2d 254, 256 (¶¶3, 7) (Miss. Ct. App. 2007). The trial court did not err in relying on this

testimony.

### C. Testimony of Stephen Borsi

¶27. Borsi maintains there was insufficient proof that he was under the influence of, or impaired by, marijuana at the time he was stopped. The statute, in relevant part, states, "It is unlawful for a person to drive or otherwise operate a vehicle within this state if the person . . . [i]s under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law[.]" Miss. Code Ann. § 63-11-30(1)(c).

¶28. At trial, Borsi again stated, "I was not under the influence of any kind of marijuana other than CBD and I had only taken one hit of that, and I would not even consider it a full hit. I was not impaired." He argues that his capacity for clarity and control was not diminished and that he was not too impaired to drive when he encountered the roadblock. Borsi misunderstands what the State was required to prove under the statute—not his level of impairment, but whether he was under the influence. In *Heidelberg v. State*, 976 So. 2d 948, 950-51 (¶¶13, 14) (Miss. Ct. App. 2007), Heidelberg was convicted under section 63-11-30(1)(a), which makes it unlawful for a person to drive "under the influence of intoxicating liquor." We held that a conviction for driving under influence did not require proof that alcohol impaired a defendant's ability to drive—only that he was driving a motor vehicle while he was under influence of intoxicating liquor. *Id.* To compare, Borsi was convicted under section 63-11-30(1)(c), which makes it unlawful for a person to drive "under

16

the influence of any drug or controlled substance." Given the similar wording of these sections of the statute, we do not find that a different test should be applied.

¶29. *Beal*, 958 So. 2d at 256 (¶7), was a case involving a controlled-substance DUI. Similar to Borsi's case, in *Beal* the officer smelled marijuana coming from Beal's vehicle, Beal admitted he had smoked marijuana before being pulled over, and the officer noted that Beal's eyes "were bloodshot, red and very glazy." *Id.* at 255-56 (¶¶2-3). In addition, the officer saw "a green leafy substance that appeared to be marijuana on Beal's clothing." *Id.* at 255 (¶2). This Court held that this was sufficient evidence to find that Beal was "under the influence when he was stopped." *Id.* at 257 (¶9).

¶30. Borsi also says the trial court erred by discounting the testimony of Winstead, who testified that Borsi was coherent and able to give her clear directions when he called to ask her to pick up his car at the time of his arrest. Winstead further testified that she had no reason to believe he was impaired that evening. However, she also stated that she had never seen Borsi under the influence of drugs or alcohol, and she admitted that she did not know what Borsi would look like or act like if he had been smoking marijuana. In his ruling, the trial judge specifically stated, "[Winstead] was not with him at a time that's relevant to anything in this case and she's just never seen him smoke marijuana." We find that the trial court considered Winstead's testimony and found it unhelpful in this instance.

¶31. "It [is] within the [fact-finder's] province to draw reasonable inferences from the evidence based on [his] experience and common sense." *Broomfield v. State*, 878 So. 2d

17

207, 215 (¶30) (Miss. Ct. App. 2004). Borsi admits as much, stating, "[P]roof [of impairment] is going to turn on the testimony of the defendant, police officers, and any other witnesses. The trial court . . . found the testimony of Holifield and Williams to be credible." The trial court did not find Winstead's testimony unreliable; rather, it was found to be irrelevant. The trial court found it compelling that Borsi admitted to smoking marijuana and that there was marijuana found in his car. In this instance, the trial court recognized that the intoxication standard for alcohol (.08 percent) has not been similarly specified for marijuana and went on to explain that there is a low level of proof needed to prove that someone is under the influence of a controlled substance. The trial court took into account the testimony of Nichols and Lockley, noting "[t]his case is far more powerful than that one[, *Beal*,] because the State here actually went to the proof of checking his urine and wallah. It had the active ingredient in marijuana in it." Looking at the witnesses who testified and the evidence presented at trial, a fact-finder could reasonably determine that Borsi had been driving his car while under the influence of marijuana.

V.    **Whether Borsi was improperly assessed an $85 transfer fee by the Rankin County Circuit Clerk.**

¶32.    On August 21, 2019, when Borsi paid the necessary fees to appeal from justice court to county court, he was charged an $85 "Clerk's Fee, Private" by the circuit clerk. On November 20, 2019, when Borsi appealed the possession charge to county court, he was again assessed fees including an $85 "Clerk's Fee, Private" by the circuit clerk. On March 12, 2020, as part of the appeal process from county court to circuit court, Borsi was charged

18

an $85 "Circuit Court Transfer Fee." Borsi argued that when he appealed from county court to circuit court he was erroneously assessed a second $85 filing fee by the Rankin County Circuit Clerk. The circuit court denied relief on this claim.

¶33. In support of his argument, Borsi relies on the following portion of Mississippi Code Annotated section 25-7-13(1)(a) (Supp. 2019):

> (1) The clerks of the circuit court shall charge the following fees:
> (a) Docketing, filing, marking and registering each complaint, petition and indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 85.00[.]
> The fee set forth in this paragraph shall be the total fee for all services performed by the clerk up to and including entry of judgment with respect to each complaint, petition or indictment, including all answers, claims, orders, continuances and other papers filed therein, issuing each writ, summons, subpoena or other such instruments, swearing witnesses, taking and recording bonds and pleas, and recording judgments, orders, fiats and certificates . . . .

¶34. Borsi claims that he was only overcharged once, but a review of the record shows that Borsi was actually assessed $85 on three occasions. As indicated above, two were labeled as a "Clerk's Fee, Private" and the other was labeled as a "Circuit Court Transfer Fee." The circuit clerk also serves as the clerk of the county court and is charged with keeping "[t]he dockets, minutes, and records of the county court . . . , so far as is practicable, in the same manner as are those of the circuit court as provided by statute and the Mississippi Rules of Civil Procedure." Miss. Code Ann. § 9-9-29 (Rev. 2019). Notwithstanding the fact that the fee entitled "Clerk's Fee, Private" is not one of the allowable fees enumerated in section 25-7-13, the applicable line of cases in Mississippi does not allow circuit clerks to charge fees that are not allowed under section 25-7-13. *See Staples v. Blue Cross & Blue Shield of Miss.*

19

*Inc.*, 585 So. 2d 747, 749-50 (Miss. 1991). It is unclear from the record why the Rankin County Circuit Clerk charged Mr. Borsi $85 on three occasions. While it is apparent to this Court that there should be more transparency regarding the nature and purpose of the fees assessed by the circuit clerk's office, we are only charged with the review of the $85 fee assessed by the circuit clerk when Mr. Borsi appealed from county court to circuit court. This fee is prohibited by *Staples*. *Id.* We reverse the circuit court's finding regarding the $85 fee and render judgment in Borsi's favor on this specific matter.

**VI.      Whether Borsi's new arguments are properly before the court.**

¶35.    Borsi raises an additional six arguments for the first time on appeal:

1. **Whether Borsi's conviction should be reversed because he had a prescription for the drug and had only used it (legally) in Florida.**

2. **Whether Borsi had used a product containing (allegedly illegal) CBD, not THC.**

3. **Whether testimony regarding Borsi's alleged impairment should have been struck from the record because he was allowed to move his car from one side of the road to the other.**

4. **Whether there was proof of intoxication.**

5. **Whether Judge McDaniel improperly based Borsi's DUI conviction on *Beal v. State*.**

6. **Whether DUIs should be given to people taking prescribed substances in compliance with their prescriptions.**

¶36.    The latter two arguments were not mentioned until Borsi's reply brief. We do "not consider issues raised for the first time on appeal." *Anderson v. LaVere*, 136 So. 3d 404, 410

(¶27) (Miss. 2014). Regarding the other arguments, we do not hold trial courts in error on issues not presented to them for consideration. *Davis v. Guido*, 308 So. 3d 874, 882 (¶33) (Miss. Ct. App. 2020). "Precedent mandates that this Court not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs." *Chantey Music Pub. Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1060 (¶28) (Miss. 2005) (citing *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 730 (Miss. 1989)). Because Borsi failed to set forth these arguments at trial, he is barred from raising them on appeal.

¶37. Additionally, we note that neither Borsi's brief nor his reply brief set forth any authority in support of his new arguments. The Mississippi Rules of Appellate Procedure require that the argument section of an appellant's brief "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(7). It is well-settled law that we do not decide cases based upon unsupported representations made by the parties in their briefs. *See Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182, 186 (Miss. 1989). Borsi's arguments are clearly not the type contemplated by Rule 28(a)(7). This Court has consistently held that the "[f]ailure to cite any authority is a procedural bar, and [a reviewing court] is under no obligation to consider the assignment." *Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶4) (Miss. Ct. App. 2005) (citations omitted); *accord Jefferson v. State*, 138 So. 3d 263, 265 (¶¶8-9) (Miss. Ct. App. 2014) (holding that

21

"[t]he appellant must affirmatively demonstrate error in the court below, and failure to do so waives an issue on appeal"). Because Borsi has failed to supply any legal authority on these issues, we decline to address these assignments of error.

## CONCLUSION

¶38. The roadblock that led to Borsi's arrest was undertaken for a proper purpose, and there is no indication in the record that the MHP deviated from its general practice regarding roadblocks on the night in question. There was no Fourth Amendment violation. Borsi was not under custodial interrogation when he admitted to smoking marijuana, so there was no *Miranda* violation. The trial court properly applied the law to convict Borsi of DUI based on his being under the influence rather than impaired. And in making its finding that Borsi was under the influence of marijuana, the trial court properly relied on the witness testimony and the evidence presented at trial. Lastly, the circuit court's finding that Borsi was properly charged the $85 transfer fee was unreasonable based on the evidence before it. Borsi's conviction is affirmed, and the decision regarding the $85 transfer fee is reversed and rendered.

¶39. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. BARNES, C.J., AND WILSON, P.J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**