# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00830-COA

**CORY S. SLADE**                                                      **APPELLANT**

**v.**

**CITY OF LUMBERTON**                                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/27/2023 |
| TRIAL JUDGE: | HON. BRAD ASHLEY TOUCHSTONE |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL SCOTT BISHOP |
| ATTORNEYS FOR APPELLEE: | L. CLARK HICKS JR. |
| | R. LANE DOSSETT |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 11/05/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., SMITH AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Cory S. Slade filed a complaint in the Lamar County Circuit Court against the City of Lumberton and Philipe Ducksworth, a City of Lumberton police officer, pursuant to the provisions of the Mississippi Tort Claims Act (MTCA). In his complaint, Slade alleged that he had suffered property damage and damage to his person as a result of an automobile collision caused by Ducksworth's negligent acts in reckless disregard for the safety of Slade and the public during a high-speed chase.[1] Lumberton moved for summary judgment, arguing that Lumberton was immune from liability under the MTCA and, alternatively, that Slade

---

[1] On December 20, 2021, the parties entered into an agreed order dismissing Ducksworth, who was acting police chief at the time of the incident.

could not establish causation. The circuit court found that under the totality of the circumstances, there was no genuine issue of material fact that Ducksworth did not act with reckless disregard for the safety of Slade or the general public. Accordingly, the trial court found that Lumberton was protected from liability by sovereign immunity under the MTCA and granted summary judgment in favor of Lumberton. Aggrieved, Slade filed his notice of appeal.

## FACTS AND PROCEDURAL HISTORY

¶2.     On March 28, 2019, Officer Ducksworth was sitting in a vehicle on Main Street in Lumberton, Mississippi, watching traffic, when he saw Justin Brown drive by and observed he was not wearing his seat belt. Ducksworth followed behind him, with blue lights and sirens engaged. Brown pulled over near Lower Airport Road, which Ducksworth testified was in the city limits of Lumberton. When Ducksworth pulled in behind Brown, Ducksworth notified dispatch of the circumstances and exited his vehicle.[2] After Ducksworth exited his vehicle, Brown drove away, fleeing.

¶3.     Ducksworth pursued Brown, reaching a speed of ninety miles per hour to catch up with him.[3] Ducksworth again notified dispatch regarding his situation. Eventually, they turned onto Four Mile Road, and Ducksworth slowed to around eighty miles per hour because he was unfamiliar with the area. At a curve in the road, Ducksworth briefly lost sight

---

[2] Ducksworth explained that when he notified dispatch, he gave them a code for a traffic stop, the tag number, a description of the vehicle, and his location.

[3] Nothing in the record indicates that Ducksworth's testimony regarding his speed at all times during the chase was disputed.

of Brown, and when he rounded the curve, he discovered that Brown had struck Slade's vehicle head-on in Slade's lane of travel.

¶4.    According to Ducksworth, the distance from the initial stop to the accident site was between three and four miles and lasted around three to four minutes. The collision site was outside the Lumberton city limits. The entire time of the chase, Ducksworth had his siren and blue lights engaged. Ducksworth came to a stop at the scene and drew his weapon because he did not know the suspect. He ordered Brown to exit the vehicle, but Brown could not get out because the door was stuck. Ducksworth told Brown to exit the vehicle from the other side at which time Ducksworth heard "the other guy" (Slade) screaming about his leg. Ducksworth handcuffed Brown and put him in the back of his vehicle. Ducksworth ran the information on Slade's vehicle and Lamar County officials arrived. Ducksworth also called for medical assistance for Slade. The Lamar County officials took pictures and searched Brown's vehicle. Finding marijuana, the Lamar County officials transported Brown to the Lamar County jail. Brown was also charged with additional crimes by the City of Lumberton, including reckless driving, failure to yield to blue lights, and driving with a suspended license.

¶5.    At the conclusion of discovery, Lumberton moved for summary judgment. After a hearing on June 12, 2023, and considering the pleadings and oral argument, the circuit court granted Lumberton's motion for summary judgment.

¶6.    Slade argues two points of error on appeal: first, that the circuit court erred in granting summary judgment for Lumberton and, second, that the circuit judge should have recused

himself "given the reasonable concerns over his fairness and impartiality."[4]

## I. Whether the circuit court erred in granting summary judgment in favor of Lumberton.

¶7. In its motion for summary judgment, Lumberton asserted immunity pursuant to Mississippi Code Annotated section 11-46-9(1)(c) (Rev. 2019), which provides that "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim" . . . "[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in **reckless disregard** of the safety and well-being of any person not engaged in criminal activity at the time of injury." (Emphasis added). It is undisputed that Ducksworth was acting in the course and scope of his employment with Lumberton and that Slade was not engaged in criminal activity, so unless Slade proved by a preponderance of the evidence that Ducksworth acted with reckless disregard, Lumberton cannot be held liable. *City of Laurel v. Williams*, 21 So. 3d 1170, 1174 (¶17) (Miss. 2009).

¶8. With regard to our review of the issue before us, we set forth the standard of review in *Sanders v. Attala County*, 332 So. 3d 292, 298-99 (¶27) (Miss. Ct. App. 2021):

> "This Court applies a de novo standard of review to a grant of summary judgment and to issues involving the interpretation and application of the MTCA." *Irwin-Giles v. Panola County*, 253 So. 3d 922, 925 (¶10) (Miss. Ct. App. 2018) (quoting *Lane v. Miss. Dep't of Transp.*, 220 So. 3d 254, 256 (¶4) (Miss. Ct. App. 2017)). As set forth in Mississippi Rule of Civil Procedure 56(c), summary judgment is appropriate where "the pleadings, depositions,

---

[4] Slade filed a motion to recuse after learning at the summary judgment hearing that Judge Touchstone had formerly represented the City of Lumberton.

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "'The evidence must be viewed in the light most favorable to the party against whom the motion has been made[,]'" and "[t]he moving party has the burden of demonstrating that no genuine issue of material facts exists, [giving] . . . the non-moving party . . . the benefit of the doubt concerning the existence of a material fact." *Duckworth v. Warren*, 10 So. 3d 433, 436-37 (¶9) (Miss. 2009) (quoting *One S. Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (¶6) (Miss. 2007)). Nevertheless, "[t]he mere existence of some alleged factual dispute between the parties . . . will not defeat an otherwise properly supported motion for summary judgment; '[t]he dispute must be genuine, and the facts must be material.'" *Smith v. City of Southaven*, 308 So. 3d 456, 461 (¶16) (Miss. Ct. App. 2020) (quoting *Williams v. Bennett*, 921 So. 2d 1269, 1272 (¶10) (Miss. 2006)).

Further, this Court has held that "[i]mmunity is a question of law and is a proper matter for summary judgment." *City of Clinton v. Tornes*, 252 So. 3d 34, 36 (¶5) (Miss. 2018).

¶9.     In *Phillips v. City of Oxford*, 368 So. 3d 317, 323-24 (¶¶22-23) (Miss. 2023), the supreme court explained:

> We have recognized that the purpose of Mississippi Code Section 11-46-9 is to "protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim." [*City of Jackson v.*] *Perry*, 764 So. 2d [373,] 379 (¶25) [(Miss. 2000)]. "By requiring a finding of 'reckless disregard of the safety and well-being of others,' the Legislature set an extremely high bar for plaintiffs seeking to recover against a city for a police officer's conduct while engaged in the performance of his or her duties." *City of Jackson v. Presley*, 40 So. 3d 520, 523 (¶12) (Miss. 2010). "Police officers and fire fighters are more likely to be exposed to dangerous situations and to liability, and therefore, public policy requires that they not be liable for mere negligence[,]" but for "reckless acts only." *Maldonado* [*v. Kelly*], 768 So. 2d [906,] 909 (¶6) [(Miss. 2000)] (citing *Maye v. Pearl River Cnty.*, 758 So. 2d 391 (Miss. 1999)).
>
> We have held that "[r]eckless disregard" under Section 11-46-9(1)(c) "is a higher standard than gross negligence" and "embraces willful or wanton conduct which requires knowingly or intentionally doing a thing or wrongful act." [*City of Vicksburg v.*] *Williams*, 294 So. 3d [599,] 601-02 (¶15) [(Miss.

2020)] (internal quotation marks omitted) (quoting *Collins v. Tallahatchie Cnty.*, 876 So. 2d 284, 287 (¶8) (Miss. 2004)). "[W]antonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." *Maldonado*, 768 So. 2d at 910 (¶8) (internal quotation marks omitted) (quoting *Turner v. City of Ruleville*, 735 So. 2d 226, 229 (¶16) (Miss. 1999)). The Court in *Turner* defined reckless disregard as:

> the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, *the voluntary refraining from doing a proper or prudent act when such act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident happening without intent that any occur . . . .*

[(Emphasis in original)]. *Turner*, 735 So. 2d at 229 (¶11) (quoting Reckless disregard, Black's Law Dictionary (6th ed. 1991)). Reckless disregard "usually is accompanied by a conscious indifference to consequences, **amounting almost to a willingness that harm should follow**." *Maye*, 758 So. 2d at 394 (¶19) (quoting *Orthopedic & Sports Injury Clinic v. Wang Lab'ys Inc.*, 922 F.2d 220, 224 n.3 (5th Cir. 1991)).

(Emphasis added).

¶10.    In *Tennesen v. City of Hattiesburg*, No. 2021-CA-00137-COA, 2022 WL 16758270, at \*6 (¶29) (Miss. Ct. App. Nov. 8, 2022), *cert. denied*, 360 So. 3d 651 (Miss. Mar. 13, 2023), we explained:

The supreme court has set forth ten factors for a trial court to consider when assessing "reckless disregard" in police-pursuit cases, as follows:

> (1) length of the chase; (2) type of neighborhood; (3) characteristics of the streets; (4) presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; (6) seriousness of the offense for which the police are pursuing the suspect; (7) whether the officer proceeded with sirens and blue lights; (8) whether the officer had available alternatives which would lead to the apprehension of the suspect besides pursuit; (9) existence of a police policy which prohibits pursuit under the circumstances; and (10) rate of speed of the officer in

6

comparison to the posted speed limit.

> [*City of Jackson v.*] *Gray*, 72 So. 3d [491,] 496-97 (¶17) [(Miss. 2011)] (citing [*City of Ellisville v.*] *Richardson*, 913 So. 2d [973,] 977 (¶15) [(Miss. 2005)]); *see also* [*City of Jackson v.*] *Brister*, 838 So. 2d [274,] 280 (¶22) [(Miss. 2003). In undertaking a "reckless disregard" analysis, "[i]t is appropriate for trial courts to consider all ten factors, and to look at the totality of the circumstances when analyzing whether someone acted in reckless disregard." *Gray*, 72 So. 3d at 497 (¶17) (quoting *Richardson*, 913 So. 2d at 978 (¶17)).

¶11.    In its summary judgment order, the circuit court recognized that "[t]o determine if a police pursuit was done with reckless disregard for the public's safety, a court must examine the totality of the circumstances. To guide trial courts in evaluating the totality of the circumstances, the Mississippi Supreme Court has developed what have come to be known as the *Brister/Richardson* factors." The circuit court went on to list those ten factors and noted that "[w]ith these factors in mind, the [c]ourt looks at the facts surrounding the police pursuit in question."

¶12.    The circuit court considered each factor individually:

> 1. *Length of chase*
>    "Length," as used in this factor, can refer to either the distance traveled, the time elapsed during the pursuit, or both.
>    The only evidence of the chase's length came from Officer Ducksworth. In his deposition, he stated the chase lasted "three or four minutes" and covered "three to four miles." Mississippi court decisions have not established a pattern regarding chases of this approximate length. E.g., *City of Jackson v. Thornton*, 94 So. 3d 1186, 1196 (¶22) (Miss. Ct. App. 2011) (four and 1/2 miles; reckless disregard); *City of Jackson v. Gray*, 72 So. 3d 491, 498 (¶20) (Miss. 2011) (four to six miles; not reckless disregard); *City of Jackson v. Law*, 65 So. 3d 821, 832 (¶43) (Miss. 2011) (five minutes, thirty-three seconds/seven miles; reckless disregard); *McCoy v. City of Florence*, 949 So. 2d 69, 81 (¶45) (Miss. 2006) (five miles; not reckless disregard).

> 2. *Type of neighborhood*
>    It is uncontested that the pursuit stayed in a rural area.

7

3. *Characteristics of the roads traveled*

The roads were in decent shape, and not "bumpy or bad." Slade notes that Four Mile Road had a sharp curve shortly before the site of the collision.

4. *Vehicular and pedestrian traffic*

Ducksworth testified he may have seen three other vehicles on Highway 13, and they all pulled over. Slade argues the accident happened at approximately 3:15 pm. Schools were dismissed around this time so there could have been school buses on the road. However, the area where the pursuit occurred is not near the Lumberton schools.

5. *Road conditions*

It was a clear, sunny day, and the roads were dry.

6. *Offense for pursuit*

Ducksworth initiated a traffic stop for a misdemeanor seat belt violation. While Lumberton admits that a seat belt violation, in and of itself, would not justify a pursuit, the suspect fled from Ducksworth as he approached the vehicle on foot. In Ducksworth's opinion, this created reasonable suspicion that justified the pursuit.

7. *Siren and blue light*

It is undisputed Officer Ducksworth used his lights and siren.

8. *Alternatives to pursuit*

Ducksworth "called in" the suspect car's license plate, but the information concerning the person to whom the plate was registered had not returned by the time the pursuit began. In any event, that person was not the driver of the car. Other than Ducksworth, only one other officer was on duty. Lumberton does not have any aerial resources that could be used to track the suspect from above. While Ducksworth may have been able to seek assistance from the Lamar County Sheriff's Office, the number of deputies on duty at any given time and the large area they must cover makes it unlikely a deputy would have been able to assist.

9. *Pursuit policy*

Lumberton's pursuit policy allow[s] pursuits in the officer's discretion based on an analysis under the supervision of the lead officer in charge. Officer Ducksworth was the acting police chief at the time, so he was both lead officer and the ranking officer on duty. Ducksworth testified he continuously evaluated whether to continue the pursuit and he backed off when he thought it was appropriate to do so.

The policy states the speed of the pursuit should be based on the seriousness of the offense, the opportunities for later arrest of the violator, traffic density, and the exercise of sound judgment. As to "sound judgment," the policy classifies violations in one of three categories: (1) continuing hazardous moving violators (such as drunk drivers); (2) momentarily hazardous moving violators (such as running a stop sign); and (3) technical violators (such as improper license). The justification for a pursuit decreases with the seriousness of the violation.

While most of the factors the Court has considered thus far have been neutral or favorable to Lumberton, this factor is favorable to Slade. The only violation of which Ducksworth could be certain was the misdemeanor seatbelt violation. This would be a technical violation.

10. *Speed*
Ducksworth testified he reached a top speed of 90 mph and reduced speed on Four Mile Road to 80 miles per hour. Given the area, traffic, and road conditions, the Court cannot state this speed was unreasonable.

When this Court examines the totality of the circumstances, it finds the pursuit did not rise to the level of reckless disregard. While the seatbelt violation would not justify a pursuit, in and of itself, the suspect fleeing elevated the seriousness of the offense in the experienced opinion of Officer Ducksworth. Further, this was a rural area with roads in good condition. The pursuit only lasted a few miles and a few minutes. Given these facts, Officer Ducksworth's conduct did not rise to reckless disregard. Slade's injuries and property damage were indeed unfortunate, but Lumberton may not be held liable for those injuries and damage.

Slade argues that while the circuit court found most of the *Brister/Richardson* factors favorable to Lumberton, the court found that the "pursuit policy" favored Slade. Slade contends that by making that statement alone, the circuit court conceded a genuine issue of material fact existed that would preclude summary judgment. This is an incorrect interpretation of the analysis for reckless disregard. "In undertaking a 'reckless disregard' analysis, '[i]t is appropriate for trial courts to consider all ten factors, and to look at the totality of the circumstances when analyzing whether someone acted in reckless disregard.'"

9

*Tennesen*, 2022 WL 16758270, at \*6 (¶29) (quoting *City of Jackson v. Gray*, 72 So. 3d 491, 497 (¶17) (Miss. 2011) (quoting *Richardson*, 913 So. 2d at 978 (¶17)). One factor weighing in Slade's favor does not, by itself, create a genuine issue of material fact. Here, the trial court carefully considered each of the *Richardson/Brister* factors and, finding most favorable to Lumberton, found no reckless disregard.

¶13.    The dissent argues that "Ducksworth's decision to undertake an unnecessary pursuit in the first place, coupled with other significant factors, resulted in severe injuries to Slade, and Slade should be afforded the opportunity to present his case in full at trial." *Post* at ¶28. The dissent points out that Ducksworth had the vehicle's tag number, which would have given him an alternative method for making an arrest at a later time. But as the trial judge noted in his analysis, the person the vehicle was registered to was not the driver who fled the scene. Further, the trial court found that Brown's flight from the scene of the initial stop created reasonable suspicion that justified Ducksworth's pursuit. In *Hamp v. State*, 207 So. 3d 684, 689 (¶19) (Miss. Ct. App. 2016), this Court stated:

> We further find that Hamp's flight gave rise to reasonable suspicion sufficient for Deputy Harvey to follow in pursuit. *See Cooper* [*v. State*], 145 So. 3d [1219,] 1172 (¶29) [(Miss. Ct. App. 2013)]. "[H]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id*. (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). "Furthermore, nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Id*. at 1172-73 (¶29).

The dissent also argues that the speed of the chase on a two-lane road should favor a finding of "reckless disregard." However, the trial court found, "Given the area, traffic, and road conditions, the Court cannot state this speed was unreasonable." The record shows that

10

Ducksworth encountered only three other vehicles during the pursuit and that all three had time to pull over to the side of the road. Finally, the dissent argues that at 3:15 p.m. with school dismissals, buses could have been on the road. Again, however, the trial court noted, and the record shows, that no buses were on the road and that the pursuit was not near the Lumberton schools.

¶14. There are sufficient facts in the record for this Court to apply the *Richardson/Brister* factors to determine whether the trial court erred in granting summary judgment in Lumberton's favor. There is no conflicting evidence regarding the length of the chase, the type of neighborhood, the characteristics of the roads involved, the traffic at the time, the road conditions, Ducksworth's use of his siren and blue lights, or Ducksworth's general speed. Thus, under our de novo review, we find that the trial court did not err by finding no reckless disregard based on the undisputed historical facts presented. *See Mozingo v. Scharf*, 828 So. 2d 1246, 1252 (¶15) (Miss. 2002).

**II. Whether the circuit court judge erred in denying Slade's motion to recuse.**

¶15. At the commencement of this litigation, the presiding judge was the Honorable Anthony Mozingo. Judge Mozingo retired on December 31, 2022. During the hearing on Lumberton's motion for summary judgment, the new judge, Brad Touchstone, who inherited this case when he took office on January 1, 2023, advised the parties that he had previously represented the City of Lumberton in his capacity as a private attorney. Judge Touchstone explained that he was not representing the City of Lumberton during the times relevant to this litigation, nor was he familiar with any of the parties. Slade's counsel advised the circuit

11

court that he would need to consult with his client regarding the potential conflict but continued with the hearing because a trial date was already set.

¶16. After conferring with counsel, on June 14, 2023, Slade filed a motion for recusal, arguing that the "trial judge is the sole fact finder, and thus will be making all decisions not only on evidentiary issues, but also on liability and potential damages issues, as well." Slade advised the circuit court of his "grave concerns about potential impartiality." Judge Touchstone denied the motion.

¶17. The circuit judge explained in the order denying Slade's motion that although he was "once municipal attorney for the City of Lumberton," he found "it unreasonable to question [his] impartiality." He went on to state that "it stretches credulity that a reasonable person would find a court would be biased toward a former client when that professional relationship has not existed in over four-and-a-half years."

¶18. In *Battise v. Aucoin*, 311 So. 3d 588, 592 (¶17) (Miss. 2021), the supreme court explained:

> The law surrounding the recusal of a judge in Mississippi is well settled. Under Canon 3 of the Code of Judicial Conduct, an appellate court, in deciding whether a judge should have disqualified himself from hearing a case uses an objective standard. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Jenkins v. Forrest County Gen. Hosp.*, 542 So. 2d 1180, 1181 (Miss. 1988). "The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application." *Collins v. Joshi*, 611 So. 2d 898, 902 (Miss. 1992). This Court presumes that a trial judge is qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption. *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997). When a judge is not disqualified under the constitutional or statutory provisions **the decision is left up to each individual**

**judge and is subject to review only in a case of manifest abuse of discretion**. *Buchanan v. Buchanan*, 587 So. 2d 892, 895 (Miss. 1991).

(Emphasis added); *see also Tubwell v. Grant*, 760 So. 2d 687, 689 (Miss. 2000).

¶19.    Slade cites two instances of concern in his brief. First, he points to a comment by defense counsel prior to mediation that they considered Judge Touchstone to be more "pro-law enforcement officer" than Judge Mozingo and that as a result, the value of Slade's case had diminished since Judge Mozingo's retirement. Second, Slade points to a statement made by Judge Touchstone during the summary judgment hearing. Slade argues that while discussing the summary judgment standard, he was "quickly cut off" by the circuit judge who made the statement, "Yes, but -- yes, but those fact questions have to be resolved by me whether it's today or at trial, right?"[5]

¶20.    Canon 3(B)(1) of the Mississippi Code of Judicial Conduct provides that "[a] judge shall hear and decide all assigned matters within the judge's jurisdiction except those in which disqualification is required."

> It should be noted that no language can be found in the Mississippi Constitution of 1890, Mississippi Code Annotated, Code of Judicial Conduct or URCCC requiring, or even suggesting, that a judge's prior representation of a party, absent additional circumstances, is a basis for recusal. This relationship, standing alone, is an insufficient basis for recusal and not supported by Article 6, Section 165 of the Miss. Const. of 1890, Miss. Code Ann. § 9-1-11, Canon 3 of the Code of Judicial Conduct, URCCC 1.15 or applicable case law. It is evident that no objective reasonable person could conclude otherwise.

---

[5] Because the cause of action arose under the MTCA, the trial was to be a bench trial. Miss. Code Ann. § 11-46-13(1) (Rev. 2019).

*Hathcock v. S. Farm Bureau Cas. Ins. Co.*, 912 So. 2d 844, 853 (¶27) (Miss. 2005).[6]

¶21.    In *Price v. State*, 361 So. 3d 105, 118 (¶54) (Miss. Ct. App. 2022), we explained:

> The supreme court has stated that a trial judge is presumed to be "qualified and unbiased." *Kinney v. S. Miss. Plan. & Dev. Dist. Inc.*, 202 So. 3d 187, 194 (¶20) (Miss. 2016). "For a party to overcome the presumption, the party must produce evidence of a reasonable doubt about the validity of the presumption." *Id*. "Reasonable doubt may be found when there is a question of whether a reasonable person, knowing all of the circumstances, would harbor doubts about the judge's impartiality." *Id*. (internal quotation marks omitted).
>
> In reviewing Price's claim for plain error, we find that Price has failed to produce any evidence that raises a reasonable doubt as to the circuit court judge's impartiality. Price bases his argument for recusal on his claim that the circuit court judge previously represented him. However, Price has not provided any evidence in support of this claim other than his own assertion.

Like *Price*, Slade has produced no evidence other than his own assertions to raise a reasonable doubt as to the circuit judge's impartiality. We find that Slade failed to overcome the presumption that Judge Touchstone was qualified and unbiased, and as a result, we cannot find a manifest abuse of discretion in Judge Touchstone's failure to recuse.

¶22.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE AND SMITH, JJ., CONCUR.    McDONALD, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McCARTY, JJ.  WEDDLE, J., NOT PARTICIPATING.**

**McDONALD, J., DISSENTING:**

¶23.    I respectfully dissent from the majority's opinion affirming the trial court's grant of summary judgment in favor of the City of Lumberton in this high-speed police pursuit case.

---

[6] Lumberton argued in its response to the motion to recuse that *Hathcock* "addressed this issue under identical facts and found that recusal [was] improper."

The grant of summary judgment should be reversed because the trial court erred in its assessment of the *Brister-Richardson* factors, several of which in fact favor Slade and not the City, leading to the circuit court's erroneous conclusion of law, i.e., that the City was immune from liability. In my opinion, no police pursuit risking the safety of the public should ever be undertaken over a seatbelt violation, and Slade should have been given the opportunity to present his case in full at a trial.

¶24. "This Court applies a de novo standard of review to a grant of summary judgment and to issues involving the interpretation and application of the MTCA." *Irwin-Giles v. Panola County*, 253 So. 3d 922, 925 (¶11) (Miss. Ct. App. 2018) (citing *Lane v. Miss. Dep't of Transp.*, 220 So. 3d 254, 256 (¶4) (Miss. Ct. App. 2017)). In the context of MTCA police pursuit cases, we maintain that "summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at (¶10) (quoting M.R.C.P 56(c)). "We consider as well that the non-moving party is entitled to the benefit of all reasonable favorable inferences that may be drawn from the record." *Id.* (quoting *Burkhalter & Co. v. Wissner*, 602 So. 2d 835, 838 (Miss. 1992)).

¶25. The MTCA provides immunity for "any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." *City of*

15

*Jackson v. Lewis*, 153 So. 3d 689, 693 (¶5) (Miss. 2014) (quoting Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2012)). "Reckless disregard," according to the Supreme Court, "denotes more than mere negligence, but less than an intentional act." *Id.* (internal quotation marks omitted) (quoting *City of Jackson v. Law*, 65 So. 3d 821, 826 (¶17) (Miss. 2011)). The *Lewis* Court further stated that our courts "find [r]eckless disregard when the 'conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.'" *Id*. (quoting *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 995 (¶13) (Miss. 2003)).

¶26. Whether law enforcement acted with reckless disregard is a question of fact. *Maxwell v. Panola County*, No. 2021-CA-01001-COA, 2023 WL 2132171, at *6 (¶43) (Miss. Ct. App. Feb. 21, 2023), *cert. denied*, 369 So. 3d 996 (Miss. Sept. 4, 2023). To assist the trier of fact, the Mississippi Supreme Court has identified ten factors for the trial court to consider in determining whether the law enforcement officer acted in reckless disregard for the safety of the public in a police pursuit case. Those factors are commonly known as the *Brister-Richardson* factors and include:

> (1) length of chase; (2) type of neighborhood; (3) characteristics of the streets; (4) the presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; (6) the seriousness of the offense for which the police are pursuing the vehicle; . . . (7) whether the officer proceeded with sirens and blue lights; (8) whether the officer had available alternatives which would have led to the apprehension of the suspect besides pursuit; (9) the existence of police policy which prohibits pursuit under the circumstances; and (10) the rate of speed of the officer in comparison to the posted speed limit.

*Lewis*, 153 So. 3d at 694 (¶6) (citations and internal quotation marks omitted) (citing *City of Ellisville v. Richardson*, 913 So. 2d 973, 977-78 (¶15) (Miss. 2005). Although these factors

16

are listed individually, the Court has also directed trial courts to examine them all and "[t]o look to the totality of the circumstances when analyzing whether someone acted in reckless disregard." *Richardson*, 913 So. 2d at 978 (¶17).

¶27. I would add that although the Supreme Court listed ten factors, in my opinion, they should not be given equal weight. Indeed, some factors deal with the officer's decision to initiate a pursuit, and others deal with the execution of the pursuit. Factors such as the seriousness of the offense, the alternatives available that would lead to the apprehension of the suspect, and what guidance, if any, appears in established policy help courts decide if the decision to pursue at all may exhibit a reckless disregard for the safety of the public. An assessment of the other factors helps courts decide whether continuing a reasonable pursuit would exhibit a reckless disregard for the safety of the public due to weather, conditions of the road, speed, et cetera.

¶28. Utilizing this approach, it is clear that the seriousness of Brown's offense, a mere seatbelt violation, coupled with the fact that Ducksworth had the vehicle's tag number, which gave him an alternative method of making an arrest at a later time, made Ducksworth's decision to initiate the pursuit in this case unreasonable and unnecessary.[7] Add that decision

---

[7] The majority cites *Hamp v. State*, 207 So. 3d 684, 689 (¶19) (Miss. Ct. App. 2016), to support Officer Ducksworth's pursuit because, after initially stopping, Brown drove off. *Hamp* is factually distinguishable because the deputy there encountered a vehicle matching the description of one driven by men suspected of robbing a liquor store and assaulting its owner. *Id*. at 686-87 (¶6). This Court pointed out that law enforcement had received tips about the specific car, *id*. at 689 (¶17), and noted that the police officer has a duty to seek out those who commit reported crimes. *Id*. at (¶18). Notably, we also stated that flight is not necessarily indicative of wrongdoing. *Id*. at (¶19). In the case at hand, Officer Ducksworth had no reason to suspect Brown of anything but failing to wear a seatbelt.

to concerns about the speeds of the pursuit—ninety miles an hour only reduced to eighty

miles an hour because of a sharp curve in the road[8]—on a two-lane road, where cars had to

pull over, at 3:15 p.m. with school dismissal and the potential for buses being on the road,

and the analysis results in genuine issues of material fact in dispute concerning whether

Ducksworth's action exhibited reckless disregard for the safety of the public, precluding

summary judgment.[9]  M.R.C.P. 56(c).  As instructed by the Supreme Court, we look at the

totality of the circumstances as we examine each pursuit on a case-by-case basis.  *Phillips*,

368 So. 3d at 324 (¶24).  In this case, the seriousness of the offense, the ability to apprehend

Slade at a later time, the time of day, the speed of the vehicles on the type of road (two-lane

highway) in a chase that began within the city limits—all significant factors in my

opinion—preclude a finding at the summary judgment stage that the City was entitled to

---

[8]  We note even the official pursuit policy states that the speed of the pursuit shall be based on the seriousness of the offense and the opportunities for the later arrest of the violator.  The maximum speed limit on rural undivided (two-lane) roads in Mississippi is fifty-five miles per hour.  The maximum speed limit in Mississippi is seventy miles per hour, with the exception of toll roads, which do not exist in Mississippi. Miss. Code Ann. § 63-3-501 (Rev. 2021).  Other than the interstate, no person may operate a vehicle on the highways of the state at a speed greater than sixty-five miles per hour.  *Id.*  In addition, the driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when a special hazard exists with respect to pedestrians or other traffic.  Miss. Code Ann. § 63-3-505 (Rev. 2021).

[9]  The majority defers to the trial court's findings *after the fact* to justify a finding of no reckless disregard.  For example, according to the majority, Ducksworth only encountered three vehicles who had time to pull over, and there were no buses on the road. But, we must judge the officer's actions "on an objective standard with all the factors that they were confronted with."  *Phillips v. City of Oxford*, 368 So. 3d 317, 324 (¶24) (Miss. 2023).  Thus, Ducksworth's actions should be evaluated at the time he decided to pursue Slade in light of what he might encounter, not what, by the grace of God, he did not.

judgment as a matter of law. In this case, Ducksworth's decision to undertake an unnecessary pursuit in the first place, coupled with other significant factors, resulted in severe injuries to Slade, and Slade should be afforded the opportunity to present his case in full at trial. I would reverse and remand, and therefore I dissent.

**WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION.**